**Mr. Tokyo Gatson #280534**
**Hudson County Correctional Center**
**35 Hackensack ave.**
**Kearny, NJ, 07032**

**October 28, 2014**

RECEIVED IN THE CHAMBERS OF

NOV 0 3 2014

HON. WILLIAM J. MARTINI, U.S.D.J.

Honorable William J. Martini
M.L. King, Jr. Federal Bldg. & Courthouse
50 Walnut St.
Newark, NJ, 07102

## RE: AMEND PRO-SE BRIEF

Dear Honorable William Martini:

    At this time, I humbly request that your Honor amend these two argument to Defendant Mr. Tokyo Gatson's Pro-Se Brief. I would also like to address not being able to review my whole Discovery. I have been provided with six disks, I only can review 75% of two of them, reviewing your discovery plays a very important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal. It would be greatly appreciated if your Honor Orders the Government to convert the Discovery to be compatible to the Jails Computer systems.

    I would like to thank you for your time and assistance in resolving this matter.

Truly Yours
Mr. Tokyo Gatson

## POINT XI

## DEFENDANT MR. TOKYO GATSON REQUEST TO HAVE THE INDICTMENT DISMISSED, BECAUSE EVIDENCE DERIVED FROM THE STATE (BERGEN PROSECUTOR'S OFFICE) AUTHORIZED ELECTRONIC INTERCEPTIONS HAD BEEN PRESENTED TO A FEDERAL GRAND JURY IN VIOLATION OF 18 U.SC. 2517(5)

Communications intercepted in accordance with the procedures set forth in Title III, and evidence derived therefrom, may be disclosed and used in federal or state criminal and grand jury proceedings_unless the communication "relates to offenses other than those specified in the order of authorization or approval . . . ." **2517(5)**.  In such instances, a subsequent application must be made to a judge of competent jurisdiction who shall thereupon determine the good faith of the original application before permitting disclosure or use of the incidentally intercepted communications.

Such subsequent application would include a showing that the original order was lawfully obtained, that it was sought in good faith and not as subterfuge search, and that the communication was in fact incidentally intercepted during the course of a lawfully executed order.**S. Rep. 1097, 90th Cong., 2d Sess., at 12,** *quoted in* **2 U.S. Code Cong. & Adm. News 2112, 2189 (1968); H. Rep. 488, 90th Cong., 1st Sess., at 100**.

The framers of Title III presumably intended by this requirement to prevent evasion of the several restrictions upon original applications (e.g., showing of probable cause, enumerated serious crime, ineffectiveness of other investigatory techniques as to that offense). Otherwise, the applicant could easily name one crime while in fact he may have anticipated intercepting evidence of a different crime for which the prerequisites could not be satisfied. Such "subterfuge searches", in addition to their dissonance with Title III, would indeed run afoul of the Fourth Amendment.

(78)

Without a judge's determination of inadvertence, Title III authorization might rapidly degenerate into what Justice Clark recently termed "the electronic equivalent . . . of a 'general search warrant.'" *United States v. Brodson*, 528 F.2d 214 (7th Cir. 1975).

### Section 2515 of Title 18 prohibits the receipt into evidence of intercepted communications or their fruits

in any trial, hearing, or other proceeding in or before any court, grand jury, . . . or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of *this* chapter. (Emphasis supplied). Any aggrieved person, as defined by 18 U.S.C. 2510(11),  may move to suppress the contents or fruits of an intercepted communication in a federal *or* state trial, hearing, or other proceeding on the grounds that "the communication was unlawfully intercepted", that the authorizing order was insufficient, or that the interception failed to conform with that order.  18 U.S.C. 2518(10)(a). 7

Here, of course, multiple conversations in issue were used in federal proceedings. Thus, despite the fact that the interceptions were made pursuant to a state court authorization, at the very least the other requirements of Title III -- including **2517(5)** – should have been satisfied. But whether the proceedings be federal or state, interpretation of a state wiretap statute can never be controlling where it might impose requirements less stringent than the controlling standard of Title III.  If a state should set forth procedures *more* exacting than those of the federal statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well. ***See, e.g., United States v. Manfredi, supra***, 488 F.2d at 598 n. 7; S. Rep. 1097, *supra, quoted in* 2 U.S. Code Cong. & Adm. News at 2187 (1968) and note 9, *supra*.

Viewing the challenged interceptions in the light of **2517(5),** our inquiry becomes both narrow and relatively straightforward.  When an investigative or law enforcement officer engaged in an authorized electronic surveillance operation intercepts wire or oral communications relating to offenses *other than those specified* in the order of authorization or

approval,subsequent judicial approval must be obtained before the contents of such communications may be disclosed or used in any criminal or grand jury proceeding.  **18 U.S.C. 2517**(5) (emphasis supplied).  **See also** **18 U.S.C. 2517**(3), amended in 1970 to encompass disclosure in non-criminal proceedings as well.

In this case, the Bergen County Prosecutor's Office was given authorization From Nov. 2012 through October 10, 2013 to intercept communications providing evidence of various state offenses, including **Burglary**  **2C:18-2**, **Possession of Burglary tools 2C:5-5, Theft of Moveable Property (N.J.S.A. 2C:20-3a)** and conspiracy to commit that crime. The fruits of the tap were later used before a federal grand jury conducting an investigation into possible violations of **18 U.S.C. 2314, 371 (Interstate Commerce )**.

The intercepted communication was used in the grand jury about possible violations of the federal statute. It is clear beyond all doubt that this federal offense was separate and distinct from the alleged state crime which formed the predicate for the original wiretap authorization, (Nakia Henry) and thus falls within the ambit of **2517(5)**. **Cf.  United States v. Brodson, supra**.

Mr. Justice Clark, writing for a unanimous panel of the Seventh Circuit, rejected a similar argument in **United States v. Brodson, supra**. There it was contended that because the intercepted conversations "related to" both the federal gambling offense named in the order authorizing the wiretap *and* to the slightly different federal gambling offense for which **Brodson** was indicted, further court approval was unnecessary.  The **Brodson** panel noted that the two offenses involved dissimilar elements and required different evidence, "even though some of it might overlap because both concern illegal gambling." **528 F.2d at 216**. The opinion went on to hold, however, that the controlling factor was not the dissimilarity of the offenses, "but the fact that the Government itself has violated the key provision of the legislative scheme of Section **2515**, in that it did not comply with the mandate of Section **2517(5)**." The Defendant agrees.

(80)

## CONCLUSION

Any exceptions from [the] broad language [**of 2515**] must be strictly construed in order to carry out the purpose of the Congress and make certain that the privacy of the individual is protected as so provided. Strict compliance with the requirements of **2517(5)** and the other strictures imposed by Title III is no less essential. *See United States v. Capra*, **501 F.2d 267, 276 (2d Cir. 1974)**. Congress carefully circumscribed utilization of the occasionally useful but potentially dangerous law enforcement tools of electronic surveillance in an effort to comply with the Fourth Amendment and to "protect effectively the privacy of wire and oral communications [and] the integrity of court and administrative proceedings." **Pub. L. 90-351, Title III, 801**. If, for example, federal officials called into an ongoing state wiretap operation learned at that time of communications relating to separate federal offenses not specified in the initial interception order, there would be little difficulty in obtaining the requisite subsequent approval pursuant to **2517**. And where federal and state officers pursue an investigation jointly from its inception, there is little difficulty for the appropriate federal officer to obtain a separate order authorizing the interception of communications relating to the federal offenses believed involved.

To ignore or gloss over these restrictions, or view them as mere technicalities to be read in such a fashion as to render them nugatory, then, is to place in peril our cherished personal liberties.

It is, in any event, a condition Congress has deliberately chosen to impose as a protective procedure in "creating an investigative mechanism which potentially threatened the constitutional right to privacy. . . ." *United States v. Capra*, 501 F.2d 267, 276-77 (2d Cir. 1974).

(81)

The Government here failed to secure subsequent judicial approval, whether from a state or federal judge, at any time before the conversations concerning the alleged Burglaries was used in the federal grand jury proceedings.


## POINT XII

### Motion of Mr. Tokyo Gatson to compel discovery of Rule 16 and *Brady* material in possession of F.B.I., Bergen County Prosecutor's Office other agencies


**Rule 16** requires production of documents within the governments possession, custody, or control. Fed. R. Crim. P. 16(a)(1)(B)(i), **I6(a)(I)(E)**. As Judge Friedman recently declared, the government [in Rule 16] includes any and all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, and other law enforcement agencies. ***United States v. Safavian*, 2005 U.S. Dist. LEXIS 34982, at \*7 (D.D.C. Dec. 23, 2005).** Defendant Mr. Tokyo Gatson , moves the Court under Fed. R. Civ. P. 16(a), **U.S. Const. Amends. V and VI**, and **Brady v. Maryland, 373 U.S. 83 (1963)**, and its progeny, for an Order compelling disclosure of unclassified and classified documents listed below:

1. Pursuant to the authority in Rule **16(a)(1)(A)**, Defendant requests any and all statements, confessions or admissions, made the defendant, whether written or oral, subsequently reduced to writing or summarized in officers reports or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or through the exercise of diligence may become known, to the attorneys for the Government, or any agents thereof. This request includes statements made to

**(82)**

witnesses, other than law enforcement officers, at any time while any of the Defendants

were in custody. Such evidence shall include, but shall not be limited to:

**(a)** any statements made by the Defendant in writing after the indictment;

**(b)** any statements made by the Defendant in writing prior to the indictment;

**(c)** any statements made by the Defendant which were tape recorded prior to or after the indictment;

**(d)** any oral statements made by the Defendant to or overheard by any law enforcement officer or other agent of the Government after the defendants indictment which was the subject of a verbatim or summarized report or written memorandum by the officer or agent;

**(e)** any oral statements made by the Defendant to or overheard by any law enforcement officer or other agent of the Government prior to her indictment which was the subject of a verbatim or summarized report or written memorandum by said officer or other agent of the Government;

**(f)** any written report summarizing or transcribing any tape recorded conversation including that of any of the Defendants regardless of whether the conversation occurred prior to or after the Defendants indictment;

**(g)** any oral statements made by the Defendant to or overheard by a person other than a law enforcement officer after his indictment which was the subject of a verbatim or summarized report or written memorandum either by the person hearing the statements or by a law enforcement officer or other individual receiving the recital of the Defendants statement; and

**(h)** any oral statements made by the Defendant to or overheard by a person other than a law enforcement officer prior to her indictment which is relevant to the above-entitled matter and which was the subject of a verbatim or summarized report or written memorandum, either by the person hearing the statements or by a law enforcement officer or other individual receiving the recital of the Defendants statements.

As further authority for the requests set forth in subparagraphs **(d)** through **(h)**

above, Defendant **cites United States v. Casseus, 282 F.3d 253 (3d Cir. 2002);**

**United States v. Lanova, 71 F.3d 966 (1st Cir. 1995); United States v. Galvis-**

**Valderamma, 841 F. Supp. 600 (D. N.J. 1994).**

**2.** The substance of all oral statements which the prosecution intends to offer in

evidence made by the defendant **(a)** in response to interrogation by any person then

known to the defendant to be a law enforcement agent, or **(b)** during a conversation

**(83)**

with any person who in fact was a law enforcement agent or informer or who is now a prosecution witness.

**3.** All written or recorded statements made by each of defendant Mr. Gatson's codefendants and each of defendant Mr. Gatson's alleged co-conspirators within the custody or control of the prosecution the existence of which is known, or by the exercise of due diligence may become known, to the prosecution.

**4.** The substance of all oral statements relevant to the charges herein made by defendant to any person.

**5.** The substance of all oral statements relevant to the charges herein made by each of defendant Mr. Gatson's codefendants and each of defendant Mr. Gatson's alleged co-conspirators to any person.

**6.** All books, papers, documents, photographs and tangible objects which are within the possession, custody or control of the prosecution and which are intended for use by the prosecution as evidence in chief at the trial. By this request we seek a prompt and good faith effort on the part of the prosecution to identify separately and distinguish those documents which are actually intended for use as evidence in chief from the voluminous array of documents acquired by the prosecution and grand jury during the lengthy investigation.

**7.** All books, papers, documents, photographs and tangible objects which are within the possession, custody or control of the prosecution and which are material to defense preparation.

**8.** All books, papers, documents, photographs and tangible objects which were obtained from the defendant or belonged to the defendant.

**9.** The results or reports of any and all physical and mental examinations or scientific tests or experiments made in connection with this case, which are within the

possession, custody or control of the prosecution, the existence of which is known, or

by the exercise of due diligence may become known to the prosecution and which are

material to the preparation of the defense or intended for use by the prosecution as

evidence in chief at the trial. Provide specifically:

 **(a)** a description of the test; **(b)** the date it was performed; **(c)** the name and address of the person(s) performing the test; **(d)** any reports, notes, or memoranda, photographs, diagrams or the like made in connection with the test; **(e)** a sample of the material tested.

**10**.  A copy of the prior criminal record, if any, of the defendant, and a statement of the

use, if any, the prosecution intends to make of it at trial.

**11**. A list of the names, addresses and qualifications of all experts the prosecution

intends to call as witnesses at trial, together with all reports made by such experts, or if

no report has been made, the substance of the opinion to which each expert is

expected to testify and the factual basis for each such opinion.

**12**. The recorded testimony of the defendant before any Grand Jury which relates to the

offense charged.

**13**. The recorded testimony before any Grand Jury of any codefendants or any co-

conspirators whether indicted or unindicted.

**14**. The names and current addresses of all persons the prosecution intends to call as

witnesses at trial.

**15**. All written or recorded statements made by each of the witnesses the prosecution

intends to call at trial.

**16**. The names and current addresses of all persons who made any statement to the

prosecution or to any other law enforcement agency, or provided the prosecution or any

other law enforcement agency, with any information which is in any way relevant to the charges in the indictment, and the contents of any such statements or the nature of any information.

17. The names and current addresses of each and every person who in any dealing or conversation with **(a)** defendant Mr. Gatson or **(b)** any codefendant or alleged co-conspirator, was acting on behalf of any public servant.

18. Copies of all documents, statements, and any other evidence including, but not limited to, a written summary of all oral evidence and statements, now known to the prosecution or which may become known or which through due diligence may be learned from the investigating agents or witnesses in this case or persons interviewed in connection with the investigation, which is exculpatory in nature or favorable to defendant Mr. Gatson or which may lead to material which is exculpatory in nature or favorable to defendant Mr. Gatson, or which tends to negate or mitigate the guilt of defendant Mr. Gatson, as to the offenses charged, or which would tend to reduce the punishment therefor. Include the names, addresses, and telephone numbers of all persons who know or may know of any such favorable or exculpatory material or who may lead to persons or material which may be favorable or exculpatory. Also include all written or recorded statements or the substance of oral statements by any person which are in any way conceivably inconsistent with the testimony or expected testimony such person will give at trial and any other evidence which otherwise reflects upon the credibility, competency, bias or motive of the prosecution's witnesses.

19. All investigative and arrest reports made in connection with this case.

20. With respect to each witness the government intends to call at trial, or any member of the immediate family of any such witness, attach copies of all indictments, complaints, or informations brought against such person by the federal, or any state or local government, all disciplinary, licensing, tax, customs, or immigration proceedings brought by the federal, or any state or local government, and state what counts or actions have been the subject of guilty pleas, convictions, dismissals, or understandings to dismiss at a future date; the date or dates on which pleas of guilty, if any, took place; and the names of the judges or hearing officers before whom such pleas were taken. If the government does not have copies of all indictments, complaints, informations, or disciplinary, licensing, tax, customs or immigration proceedings, state the dates and places of arrests, hearings, indictments, and informations, the charges brought, and the disposition of those charges or matters so far as it is known to the government.

21. With respect to each witness the government intends to call at trial, or any member of the immediate family of any such witness, set forth a written summary of all charges or tax proceedings which could be brought by the federal, or any state or local government, but which have not or may not or which the witness believes have not or may not be brought because the witness is cooperating with or has cooperated with the government, or for any other reason. Include copies of all memoranda of understanding between the government and its witnesses, whether by way of a letter to the attorney for a witness or otherwise.

22. Enumerate all government inducements, promises, rewards, payments and witness fees by amount and date made to and all agreements made with all witnesses the government intends to call at trial. Include all information which may bear on the credibility of any witness and all information bearing on his relationship to any

government agency or agent, and any informant services or other services or acts performed by him with the knowledge, acquiescence, or at the instance of the government. This request embraces any inducements or promises or benefits conferred on any other person at the behest of any individual whom the prosecution intends to call as a witness at the trial, such as spouses or other family members of the potential witness.

**23**. All deals, understandings, arrangements, assurances and promises between the prosecution or any other law enforcement agency and any prosecution witnesses, including understandings as to guilty pleas to less than an entire indictment, recommendation as to length, nature or concurrency of sentence or as to place of incarceration and all agreements not to indict or prosecute.

**24**. Any and all actions, promises or efforts formal or informal on the part of the prosecution, its agents and representatives to aid, assist or obtain benefits of any kind for any person whom the prosecution considers a potential witness at trial, or a member of the immediate family of such witness, or for the corporation, partnership, unincorporated association or business employing such potential witness or in which the witness is an employee, director, shareholder, trustee, partner member, agent or servant.

This request includes, but is not limited to **(a)** letters to anyone informing the recipient of the witness cooperation; **(b)** recommendations concerning federal or state aid or benefits; **(c)** recommendations concerning licensing, certification or registration; **(d)** promises to take affirmative action to help the status of the witness in a profession, business or employment or promises not to jeopardize such status; **(e)** aid or efforts in securing or maintaining the business or employment of a witness;

**(88)**

**(f)** aid or efforts concerning a new identity for the witness and his family, together with all other actions incidental thereto; **(g)** direct payments of money or subsidies to the witness; or **(h)** any other activities, efforts or promises similar in kind or related to the items listed in **(a)** through **(g)** above.

**25**. All reports relating to any polygraph examination administered to any prosecution witnesses.

**26**. All documents and other evidence regarding drug and alcohol usage and/or dependency by any individual the prosecution intends to use as a witness at trial including but not limited to records relating to treatment of such individual in any federal, state, city or military drug or detoxification program.

**27**. All documents and other evidence regarding any physical or mental disease, disability, or disorder affecting any individual the prosecution intends to use as a witness at trial, including but not limited to records of hospitalization or other treatments for such physical or mental disease, disability, or disorder.

**28**. The name, address and telephone number of each person to whom a photo spread or drawings were shown or who were asked to attempt to identify defendant. Attach copies of all such photo spreads and drawings. Include a brief summary of the circumstances surrounding any attempt to obtain an in-person identification of defendant, including the dates, times and places of all such attempts and the names, addresses and telephone numbers of everyone who was present.

**29**. A statement as to whether or not immunity was given in connection with the presentation of this indictment to the Grand Jury or in connection with the presentation of any aspect of the proof relating to the charges contained within this indictment, and if so, identify the recipient of the grant of immunity and the terms and conditions thereof.

**30**. Any information indicating that any potential prosecution witness may, either as a matter of law or as a matter of fact, be considered an accomplice to the crimes charged.

**31**. Any information to the effect that all or some of the evidence which may be utilized by the prosecution at trial or the fruits of which may be utilized by the prosecution at trial was illegally or improperly obtained or was obtained even partially as a result of the improper acquisition of some other evidence or information.

**32**. Copies of all search or arrest warrants and supporting affidavits, obtained for the premises, possessions or person of Mr. Gatson, copies of any document or tangible object obtained pursuant to any search warrant, arrest or otherwise from the premises, possessions or person of Mr. Gatson.

**33**. Whether any information was obtained in this case by means of electronic surveillance. If so, disclose:

      **a**. Copies of all recordings intercepted or overheard to which the defendant was a party, or in which he participated, or in which his name was mentioned or at which he was present;

      **b**. Copies of all recordings of any conversations which took place at any place or through any facility owned or leased by the defendant or in which he had a proprietary interest or at or in which he worked;

      **c**. The original tapes;

      **d**. All equipment used in intercepting, overhearing, recording or transmitting such conversations;

      **e**. All transcripts of such conversations;

      **f**. The conversational surveillance logs;

      **g**. The eavesdropping warrant, the application therefor, and all documents, information and evidence submitted in support of the application for the eavesdropping warrant;

      **h**. The record, if any, of any proceedings or testimony which took place at the time of the application for the eavesdropping warrant;

**i**. All records, documents, orders or other data relating to the installation of any conversational intercepting, surveilling or monitoring device;

**j**. All documents, directives, orders or memoranda relating to any eavesdropping, overhearing or conversational, intercepting or monitoring device that was carried or worn by any person in connection with the subject investigation;

**k**. The names and status and employment relationship of each person engaged in or encharged or connected with **(i)** the operation of any electronic or mechanical, eavesdropping, conversational, interception or overhearing device or devices; **(ii)** the carrying or wearing of any such device; **(iii)** the recording or taping of any conversation; **(iv)** the securing, storing, preserving, sealing, and record keeping relating to all such conversational surveillance.

**l**. Defendant seeks "the preservation of the prosecutors' notes relating to his/her mental impressions and opinions relating to the aircard locating mission.

**m**. Defendant seeks an order from the Court "directing all law enforcement agents and government attorneys who were involved in the 'aircard locating mission' to retain and preserve all rough notes created during the course of the investigation to locate the aircard relating to Defendant or in furtherance of the investigation .

**n**. Defendant seeks the "manufacturer model information, instructions manuals, operations manuals, user manuals, schematics, patent information, proprietary information, trade secrets, test data, the actual physical devices themselves and the calibration certification information for each device used" by the government to locate the aircard, as well as the "user manuals and/or other documents explaining the general operation/functionality of the software for the devices and end user instructions.

**o**. Defendant also seeks "all evidence relating to the real-time and historical geolocation techniques (*e.g.,* triangulation techniques) and radio wave collection methods (*e.g.,* cell site emulation, interrogation, active approach) used by the government agents/personnel and by the wireless device locators while searching for the aircard relating to Defendant.

**p**. Defendant also seeks disclosures of the identities, training, and experience of agents and other personnel who operated the equipment when locating Defendant's aircard.

**q**. Defendant seeks disclosure of information showing the geographical paths of the wireless device locators while searching for the aircard relating to Defendant.

**r**. Defendant seeks production of all evidence relating to the specific mobile tracking device used by the government, including user manuals, test data, and related software.

**s**. Defendant seeks production of the original storage devices used to log the aircard related messages and to create various data files produced to Defendant by the government.

**t**. Defendant seeks production of all communications between the government and private entities associated with T-Mobile Wireless and various companies that manufacture electronic surveillance equipment.

**u**. Defendant seeks "unredacted and unsummarized documents related to the government's motion to search for and locate the aircard.

**v**. Defendant seeks production of all text messages sent to or from FBI agents regarding the aircard locating mission.

**w**. Defendant seeks production of evidence regarding the FBI's need to call the aircard over a six-hour period while using the mobile tracking device.

34. Defendant request whether any information was obtained in this case by means of electronic surveillance. If so, Defendant seeks discloser of all the following:

**a**. Copies of all recordings intercepted or overheard to which the defendant was a party, or in which he participated, or in which his name was mentioned or at which he was present;

**b**. Copies of all recordings of any conversations which took place at any place or through any facility owned or leased by the defendant or in which he had a proprietary interest or at or in which he worked;

**c**. The original tapes;

**d**. All equipment used in intercepting, overhearing, recording or transmitting such conversations;

**e**. All transcripts of such conversations;

**f**. The conversational surveillance logs;

**g**. The eavesdropping warrant, the application therefor, and all documents, information and evidence submitted in support of the application for the eavesdropping warrant;

**h**. The record, if any, of any proceedings or testimony which took place at the time of the application for the eavesdropping warrant;

**i**. All records, documents, orders or other data relating to the installation of any conversational intercepting, surveilling or monitoring device;

**j**. All documents, directives, orders or memoranda relating to any eavesdropping, overhearing or conversational, intercepting or monitoring device that was carried or worn by any person in connection with the subject investigation;

(92)

**k**. The names and status and employment relationship of each person engaged in or encharged or connected with **(i)** the operation of any electronic or mechanical, eavesdropping, conversational, interception or overhearing device or devices; **(ii)** the carrying or wearing of any such device; **(iii)** the recording or taping of any conversation; **(iv)** the securing, storing, preserving, sealing, and record keeping relating to all such conversational surveillance.

35.  Defendant seeks All statements or alleged admissions made by any other alleged

co-conspirator the government contends are admissible at trial pursuant to the Federal

Rules of Evidence <u>801</u>.

36. Defendant seeks all memoranda of pre-indictment interviews conducted in this case.

37.Defendant seeks A complete copy of any prior criminal record relating to any person

the government contends is a co-conspirator in connection with this case.

38. Defendant seeks copies of the Master list or index of discovery produced to date by

the government, including an index of all FBI and Bergen County Prosecutor's Office

typewritten reports and field reports detailing witness statements and similar reports

from each agency participating in the investigation

39.Defendant seeks copies of the Master list or index of all of the recorded body

microphone or "consent" call conversations, along with the name of the person who

initiated the call and the persons recorded.

40. Defendant seeks All Bergen County Prosecutor's Office evidence logs, and any

evidence logs or inventories as maintained by the Bergen County Prosecutor's Office

and FBI.

41. Defendant seeks All handwritten original notes used by the investigating agents,

including Bergen County Prosecutor's Office FBI, to prepare their investigative and

witness interview reports.

42. Defendant seeks All Recordings of any witness interviews conducted by the

government.

43. Defendant seeks All correspondence, documents, e-mails, text messages, communications and faxes exchanged between FBI Agents, Bergen County Prosecutor's or any other government agent or D.Y.S.F. employee.

44. Defendant seeks the entire investigative file maintained by D.F.Y.S. regarding Ms. Nakia Henry.

45. Defendant seeks All studies, inquiries or investigations by the Bergen County Prosecutor's Office or any federal agency relating to the retail pricing of the Alleged stolen Jewelry or Property that was allegedly brought across state lines.

46. Defendant seeks a forensic copy of any computer (including any laptop) used by Defendant Mr. Gatson.

47. Defendant seeks All notes prepared by All FBI Agents during the course of the investigation or otherwise relied upon by him.

48. Defendant seeks All Documents relating in any way to any threats of prosecution, written or oral promises of immunity or leniency, 5K letters, plea agreements, negotiations, or other benefits offered, conferred, or provided by the government to any informant or cooperating witness it intends to call as a witness at trial.

49. Defendant seeks any and all records of criminal arrests or convictions of any witness or informant the government intends to call as a witness at trial, or of any alleged co-conspirator in connection with this case.

50. Documents or information that relate to any bias, prejudice, or improper motive on the part of any informant or witness the government intends to call at trial.

51. Defendant seeks All Exculpatory statements made by any person to the government or its agents, including any statements made by any informants or cooperating witnesses during any "**proffer**" or "**Queen for a Day**" session(s), interview session(s), or before the Grand Jury, that relate to the charges alleged in the indictment.

(94)

52. Defendant seeks all correspondence, documents, e-mails, text messages, communications and faxes exchanged between FBI Agents, Bergen County Prosecutor and any government agent.

53. Defendant seeks all correspondence, documents, e-mails, text messages, communications and faxes exchanged between FBI Agents, Bergen County Prosecutor, Det. B.J. Cox, any member(s) of the Dekalb County Police Dept. and any government agent.

54. Defendant seeks all correspondence, documents, e-mails, text messages, communications and faxes exchanged between FBI Agents, Bergen County Prosecutor, any member of the Granville County Sheriff's Office and any government agent.

53. Defendant seeks Bergen county prosecutor Michael Falotico and Agent Benjamin E. Mininger's entire file detailing there investigation of Mr. Gatson, including his original notes.

54. Defendant seeks All correspondence, documents, e-mails, text messages, communications and faxes exchanged between the following cooperating government witnesses or any other cooperating government witness and any government agent, FBI agent, Bergen County Prosecutor or D.F.Y.S. employee.

55. Defendant seeks All Affidavits, reports or documents detailing any wiretap warrants, search warrants pertaining to the following individuals: Jerry Montgomery, Nakia Henry, Lawrence Leevan, Courry Rice, Jerry Montgomery, Mark Gonzalez, Ayman Bishay.

56. Defendant seeks all affidavits, reports or documents detailing any wiretap warrants of number(s) 201-870-7431 and 917-405-4665

57. All authorization memoranda and confirmation letters to and from the United States Attorney or the FBI corresponding to each respective occasion in which a government

(95)

informant or government agent wore a body wire or consensually monitored a telephone call during the course of the government's investigation.

58. Chain of custody forms for all recordings of body wire and consensually recorded telephone conversations, including the sealing of any original tapes or compact discs memorializing same.

59. Copie(s) of minimization training memorand(a) provided by the United States Attorney to any individuals or agents involved in any of the Title III intercepts in this case.Defendant seeks any and all messages displayed on the Critical Reach TRAK messaging System from November 2012 through October 10, 2014 that pertains to the criminal act of Burglary in the state of New Jersey.

60. Minimization logs, the pen register records and logs, the minimization briefing notes and instructions, the names of all agents working on the Title III and their assignments, the authorization and confirmation letters to the FBI, Bergen County Prosecutor's Office and United States Attorney for each body wire and consensually-monitored telephone call, the signed consent forms by Anthony Manuel or anyone else who agreed to wear a body wire or have calls monitored. All such consent forms are requested even if no recording was made or no contact with the target of the call was achieved.

61. FBI files relating to the Title III applications and use, as maintained in Bergen County Prosecutor's Office and in FBI headquarters, including any administrative memoranda describing and discussing the Title III and its implementation.

62. Defendant seeks any and all 10 day progress reports or extensions, provided verbal reports to the issuing District Court Judge or State Judge, all memoranda and Bergen County Prosecutor's Office and FBI administrative memoranda describing the report or the court reporter's transcript of the meeting with the Judge.

(96)

63. Defendant seeks All internal reports prepared by the government or its agents, including the FBI, relating to the execution of the search warrants in October 10, 2013, of all of the Defendant's and Co-Conspirators, including reports, notes, maps, pictures, agendas, and manpower assignments.

64. Defendant seeks All documents and correspondence, including authorizations from the Department of Justice in Washington, D.C., relating to the use of a pen register on the defendant's telephone on or about November 2012 through October 10, 2013.

65. Defendant seeks copies all recorded calls made by Curtis Dent on the Essex County Correctional Facility Housing unit phone(s).

66. Defendant seeks copies of all recorded calls made by Mark Gonzalez on the Hudson County Correctional Center housing unit phone(s).

67. Defendant seeks copies of all emails received/or sent out by Mark Gonzalez while being housed at the Hudson County Correctional Center.

68. Defendant also requests any notes, writings, reports, or other records in the possession of the Government, its agents, and/or witnesses, which refer to or are relevant to the arrest of these Defendants, or any of the defendants. This request is intended to include, but not be limited to, the following information:

(a) insofar as concerns the Defendant named above, any notes and information concerning his or her arrest by F.B.I. agents, or any other law enforcement officers or individuals serving as their agents whatsoever;

It is further noted that the material requested above should be deemed to be included within that type of material which is expressly authorized and required to be supplied to the Defendant pursuant to **Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)** and its progeny.

(97)

**69**. Defendant requests that the Court exercise its discretion to order the Government to supply these Defendants sufficiently in advance of trial to enable proper preparation, with a list of all witnesses intended to be called by the Government at trial. **See United States v. Sims, 808 F. Supp. 607 (N.D. Ill. 1992)**.

**70**. Pursuant to <u>Rule 16 of the Federal Rules of Criminal Procedure</u>, the Government must disclose any and all logs and surveillance records in the possession of the Government which evidence photographic or electronic surveillance of any Defendants own conversations. This request further includes the listing of all photographic or electronic surveillance used by the Government or any of its agents in this case, including but not limited to, the date, time, location, method of photographic or electronic surveillance, and the identity of vehicles or individuals subject to surveillance. Defendant further requests that said listing indicate whether each instance of electronic surveillance resulted in a tape recording, movie, photograph, transcript, documents, written data, or other tangible manifestations of said surveillance. In addition, such evidence shall include but not be limited to:

    **(a)** any and all electronic surveillance equipment by the United States in this case for the surveillance of any defendant or any alleged co-conspirator. Said equipment is to include, but not be limited to, homing devices, beepers, GPS, body bugs, shotgun mikes, telephone taps, or other listening devices, still camera or movie camera;

    **(b)** copies of any and all radio or telephone logs made by any Government officers or officials who were involved in this case whatsoever;

    ***See e.g.,* Alderman v. United States, 394 U.S. 165, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969); United States v. James, 495 F.2d 434 (5th Cir.)** *, cert. denied,* **419 U.S. 899, 95 S. Ct. 181, 42 L. Ed. 2d 144 (1974).**

    **68**. Pursuant to subsection **(a)(1)(b)** of Rule 16 of the Federal Rules of Criminal Procedure, Defendant requests a copy of the prior criminal record of this Defendant or any other defendant in this case.

**(98)**

**69**. Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, Defendant further requests such tangible objects which are in the possession, custody, or control of the Government, and which are material to the preparation of these Defendants defenses, intended for use by the Government as evidence in chief at trial, or belong to any of the Defendants. *See* **United States v. Mandel, 914 F.2d 1215 (9th Cir. 1990).** Said tangible objects shall include, but not be limited to, those enumerated in subsection **(a)(1)(C)** of Rule 16 of the Federal Rules of Criminal Procedure. In addition, such evidence shall include, but shall not be limited to:

    **(a)** tangible objects obtained from any of the Defendants person or effects;

    **(b)** tangible objects obtained from the person, motel room, effects, residence, or any vehicle or vessel belonging to or driven by the Defendant or any codefendant and/or alleged co-conspirators in this case;

    **(c)** any and all documents, instruments, forms or statements of any kind signed or purported to have been signed by Defendant;

    **(d)** any and all documents, instruments, forms or statements of any kind signed or purported to have been signed by any co-defendant and/or alleged co-conspirator in this case;

    **(e)** all other books, papers, visual or audio recordings, documents, or tangible objects the Government plans to offer into evidence in this case;

    **(f)** any and all other books, papers, documents or tangible objects upon which the Government relied in returning the indictment against the Defendant, the discovery of which said objects is necessary to the preparation of the Defendants defense;

    **(g)** any and all property in the possession of the Government or its agents or seized by the Government or its agents belonging or alleged by the Government to belong to the Defendant;

    **(h)** any and all property in the possession of the Government or its agents or seized by the Government or its agents belonging to or alleged by the Government to belong to any codefendant and/or alleged co-conspirator;

    **(i)** any and all fingerprint impressions, clothing, tissue, hair, fiber, or other materials obtained by whatever means or process from the scene of the offense, allegedly from the Defendant or alleged co-conspirator, whether such fingerprint impression, clothing, hair, fiber, or other materials suspected to be those of Defendant, or those of some other persons known or unknown to the Government or its agents;

**(j)** any and all documents or photographs, including but not limited to machine readouts, if any, which the Government has in its possession and which tended to locate or confirm the location of any vehicle or vessel by use of a radio direction finder, radar, satellite, or surveillance aircraft, or any other electronic equipment whatsoever; and whether or not any image, light, or sight-enhancement devices such as telescopes or nightscopes were used in the surveillance of any person, vehicle or vessel involved in this case;

**(k)** any and all other alleged contraband: whatsoever, seized therefrom, and attributed to the possession of this Defendant and/or any other defendants or co-conspirators in this case, whether indicted or unindicted;

**(l)** any and all wrappers, containers, bags or material in which the foregoing was allegedly contained at the time of seizure, or at any other time, or which were otherwise seized from any of the locations described in subparagraph (k) above, together with any materials collected therewith;

**(m)** any and all papers, logs, documents, charts, diaries or writings seized therewith.

**(n)** any and all other documents or tangible objects of any type or origin seized from Defendant Mr. Gatson or from his residences, which would tend in any way to implicate any defendant in the alleged conspiracy. These documents shall not be limited to books, papers, logs, diaries, writings, and/or photographs;

**(o)** any and all photographs which the Government intends to attempt to use at trial which the Government is in possession of and which were taken during the investigation of this matter for the preparation of the indictment in this case;

**(p)** any and all charts, maps or other computations which the Government intends to attempt to use at trial or which the Government is in possession of and which were made or used during the investigation of this matter for preparation of the indictment;

**(q)** logs or investigation notes of any Government agents prepared in the course of any surveillance of any property, vehicles, or individuals, in connection with the investigation of this case;

**(r)** any other supporting documents concerning investigative notes or Governmental communications of whatever nature of each and every Government agent who participated in the alleged surveillance, search, seizure, and arrest of any person, property, or vehicle in connection with this matter;

**(s)** any other surveillance record, photographs, video or audio tape of surveillance records now in existence concerning the above-styled case;

**(t)** any and all rental contracts and records concerning rented and/or leased vehicles or which the Government intends to attempt to use at trial;

**(u)** any and all hotel and/or motel records which the Government intends to attempt to use at trial;

**(100)**

**(v)** any and all registration or document records relating to Defendant Mr. Gatson and/or any vehicle, its origin, ownership and/or driver;

**(w)** any and all documents of title pertaining to any vehicle or which the Government intends to introduce as evidence at trial.

70. Pursuant to **Rule 16 of the Federal rules of Criminal Procedure**, Defendant also requests copies of any and all search warrants procured by any law enforcement officer during the course of this case, whether before or after arrest of the defendant or before or after indictment, and copies of any and all affidavits related thereto or any documents whatsoever having any relation to said search warrants or affidavits in this case. Said materials are specifically requested to be supplied to the Defendant sufficiently in advance of any hearing on any motion to suppress evidence or on any other motion whatsoever.

71. In order to properly enable the Defendant to prepare her defense at trial, and to enable preparation of any and all pretrial motions, pursuant to the Due Process Clause of the Fifth Amendment to the Constitution of the United States and the right to effective confrontation and cross-examination under the Sixth Amendment to the Constitution of the United States and under the general authority of **Pointer v. Texas, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)** the following:

**(a)** state the names and addresses and, if applicable, the Governmental agency of each witness present who allegedly saw any Defendant conspire with any other Defendant, or engage in any allegedly illegal conduct;

**(b)** state the names, rank, positions, and addresses of any and all persons who participated in a search and seizure of any residence, building, vessel, vehicle, or person involved in this case in any way whatsoever;

**(c)** state the exact location of all observation points utilized during any and all alleged surveillance of the property, vehicles, vessels, or persons involved in this investigation, and further, when and how any observations took place at areas other than said surveillance points;

**(101)**

**(d)** state the names and addresses of any and all Government agents who participated in any stop, interrogation, or arrest of any Defendant in the above-styled action.

72. Additionally, pursuant **to Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)**, and its progeny, Defendant requests any and all material known to the Government or which may become known or through due diligence may be learned from the investigative officers, witnesses, or persons having knowledge of this case which is exculpatory in nature or favorable to the accused or which may lead to exculpatory or favorable material or which might serve to mitigate punishment, including any evidence impeaching or contradicting testimony of Government witnesses or instructions to Government witnesses not to speak with or discuss the facts of this case with defense counsel. This request is particularized in Defendants Motion for Disclosure of Impeaching Information and Memorandum of Law in Support Thereof.

Defendant respectfully shows the Court that all discovery requested herein is within the custody, control, and/or possession of the Government or its agents, and that it cannot reasonably be obtained by Defendant other than by compliance by the Government or by order of this Court. Further, Defendant shows that all of the discovery requested herein is essential to the preparation of her defenses, as mandated by the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, and is material to her defense and preparation for hearings or any pending pretrial motions. Further, the discovery requested herein is not made for purposes of delay, and poses no undue burden on the Government.

**(102)**

**WHEREFORE Defendant** respectfully prays as follows:

(a) that the Court enter an Order granting all discovery requested in this Motion;

(b) that such items of discovery as the Government might assert are privileged or otherwise not subject to discovery, be reviewed by this Honorable court *in camera,* and that any such discovery determined by the Court to be exempt therefrom be deposited with the Court for preservation in order to facilitate any necessary appellate review;

(c) that Defendant be allowed to supplement and amend this discovery request as the disclosure of information provides further bases for relief;

(d) that Defendant be permitted to file such other motions as may become necessary, based on further disclosure of other information not presently available to Defendant; and

(e) that Defendant be granted such other and further relief as the Court deems just and proper.

date: 10/28/2014

Respectfully submitted,

MR. Tokyo Sheff

(103)



OCT
30
2014
PM

CLERK, U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2014 OCT 31  PM 2: 32

Honorable William J. Martini
M.L. King Jr. Federal Bldg. & Courthouse
50 Walnut St.
Newark, NJ, 07102

Mr. Tokyo Batson #80037
Hudson County Correctional Center
35 Hackensack Ave
Kearny, NJ, 07032