UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL GATSON,<br>   a/k/a "Tokyo Gatson,"<br>   a/k/a "Craig,"<br>   a/k/a "Big Country," and<br>ANTHONY HANKS<br>   a/k/a "T.J. Hanks" | Crim. No. 2:13-CR-705 (WJM)<br><br><br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

   In a thirteen-count indictment, the Government charges Daniel Gatson with crimes arising out of an alleged scheme to burglarize homes and convert stolen goods into cash. Gatson moves for this Court to hold a *Daubert* hearing to determine whether the Government's expert witness, FBI Special Agent Scott D. Eicher ("S.A. Eicher"), may testify at trial about cellular telephone site analysis. For the reasons stated below, Gatson's request for a *Daubert* hearing is **DENIED**.

1. **Background**

   The Court writes primarily for the benefit of the parties and assumes familiarity with the facts. S.A. Eicher plans to testify that Call Detail Records ("CDRs") from Gatson's wireless cell phone service providers reveal the general location of where Gatson's phone must have been when making and receiving calls that took place during the alleged burglaries. Boiled down to its simplest form, S.A. Eicher's theory is that when a cell phone is turned on, it will scan its surroundings for the best signal. Signals emanate from cell towers, also known as cell sites. Cell sites will typically have a signal radius of approximately one or two miles. When a phone makes or receives a call, it will use the cell site with the best signal, which generally comes from the cell site that is closest to the phone or in its direct line of sight. Therefore, S.A. Eicher contends, the CDRs help reveal the general location of where Gatson's phone would have to be in order to use a particular cell site during a phone call. Generally speaking, the Government plans to use

1

this evidence to show that Gatson's phone was located in the general location of the alleged burglaries when those burglaries took place.

Gatson argues that S.A. Eicher's methodology of analyzing CDRs is flawed and therefore unreliable. Gatson bases his theory on the opinion of his expert, Manfred Schenk. According to Mr. Schenk, the "single-tower method" relied upon by S.A. Eicher is premised on incorrect assumptions about how cell site data functions. Specifically, Mr. Schenk argues that cell phone providers employ a method known as "geo-location trilateration" for the tracking of cell phones. Mr. Schenk argues that in order to ensure the best signals (and therefore the best service for their customers), cell phone providers will direct a cell phone to use the least busy cell cite of the multiple cell sites within a given vicinity. Consequently, the actual site used for a call may not necessarily be the closest cell site to the phone's location.

## 2. Discussion

Because the reliability of S.A. Eicher's testimony is firmly established, a *Daubert* hearing is not necessary. This issue is governed by Federal Rule of Evidence 702, along with the standard governing that rule enunciated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Under Rule 702, as explained in *Daubert*, "the trial judge must determine at the outset…whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). The first prong of the analysis "establishes a standard of evidentiary reliability," *id.* at 590, while the second prong "goes primarily to relevance…." *Id.* at 591. This inquiry applies to all expert testimony. *Kumho Tire. Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

Gatson does not appear to argue that S.A. Eicher is not a qualified expert; instead he attempts to argue that S.A. Eicher's report is not reliable. The Court rejects Gatson's position. First, the type of testimony S.A. Eicher seeks to offer has been admitted by other courts on numerous occasions. In *United States v. Jones*, the United States District Court for the District of Columbia denied a defendant's motion to exclude S.A. Eicher from presenting CDR testimony, noting that S.A. Eicher's methodology was "reliable" and that "the use of cell phone location records to determine the general location of a cell phone has been widely accepted by numerous federal courts." 918 F.Supp.2d 1, 5 (D.D.C. 2013) (citing cases). After reviewing the case law surrounding this type of evidence, it is readily apparent that this form of testimony has been widely accepted across the country. *Jones*, 918 F.Supp.2d at 5; *U.S. v. Davis*, No.11-60285-CR, 2013 WL 2156659 (S.D.Fla. May 17, 2013); *U.S. v. Schaffer*, 439 Fed.Appx. 344, 346-47 (5th Cir. 2011). *But see, U.S. v. Evans*, 892 F.Supp.2d 949 (N.D.Ill. 2012) (excluding cell site

2

testimony purporting to show that a defendant could have been located in a specific building).[1]

However, the Court does not base its decision solely on past holdings from other judges.  S.A. Eicher's proposed testimony is reliable for other reasons.  When deciding whether testimony is reliable under *Daubert*, a district court may consider (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Daubert*, 509 U.S. at 593-95. However, this is by no means a checklist.  "The test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Kumho Tire. Co.*, 526 U.S. at 141–42.  Here, S.A. Eicher has successfully utilized his methodology to analyze historical call detail records over the course of almost ten years.  He and other FBI agents have found this method to be reliable, which explains why they continue to employ the method when tracking cellular telephones during criminal investigations. Additionally, more precise GPS data trackers used in this case have validated the cellular data S.A. Eicher has obtained via CDRs.

Moreover, S.A. Eicher's proposed testimony is reliable under *Daubert* not only because of what it seeks to demonstrate, but also because of what it does not seek to demonstrate.  Noting that cell sites have limited signal range, S.A. Eicher nonetheless acknowledges that a cell phone will not *always* utilize the closest tower.  However, S.A. Eicher's testimony does not purport to prove the precise location of Gatson's cell phone. Instead, S.A. Eicher seeks to use CDRs for the purpose of showing the general location of where Gatson's cell phone would have to be in order to utilize certain cell sites.  While this wrinkle may detract from the weight or persuasiveness of S.A. Eicher's testimony, it does not make the methodology that underpins the testimony unreliable under *Daubert*. *United States v. Rosario,* No. 09–CR–415–2, 2014 WL 6076364, *2–3 (S.D.N.Y. Nov. 14, 2014) (the "vagaries of cell phone technology affect the persuasiveness of the circumstantial evidence, but they do not render [an expert's] testimony inadmissible."); *United States v. Fama*, No. 12–CR186, 2012 WL 6102700, *4 (E.D.N.Y. Dec. 10, 2012)

---

[1] *Evans* is distinguishable from this case.  In *Evans*, the Government's expert sought to introduce a concept known as "granulization theory," which purported to use CDRs and other data to show that a defendant could have been in a specific building that fell squarely within the coverage overlap of two cell sites.  S.A. Eicher's testimony does not go so far.  Rather than seeking to offer the location of Gatson's phone with the degree of exactitude sought to be introduced in *Evans*, S.A. Eicher merely intends to testify as to the general location of where Gatson's cell phone must have been to use a particular cell site.  *U.S. v. Machado-Erazo*, 950 F.Supp.2d 49, 57 (D.D.C. 2013) (granulization theory at issue in *Evans* distinguishable from cell site testimony that goes only to general location).

3

(noting that the defendant "lists a variety of factors that purportedly can impact the communication of a cellular phone and a particular cellular tower…[but] these concerns go to the weight of [the expert's] testimony, not the reliability"). And although Gatson does not appear to challenge the relevancy of S.A. Eicher's proposed testimony, after conducting its own independent analysis, the Court finds that the proposed testimony meets *Daubert's* relevancy requirement. *See, e.g., Jones*, 918 F.Supp.2d at 5 ("An explanation of how cell towers work and what general location a cell phone user must have been in at the time his cell phone connected to a particular cell tower would be helpful to the jury in understanding the government's claims about the movements and whereabouts of [the defendant] and his co-conspirators.")

In light of the above, it is clear that Gatson has not presented any novel challenges to S.A. Eicher's proposed testimony. Because that is the case, a *Daubert* hearing is not necessary. *See U.S. v. Mitchell*, 365 F.3d 215, 246 (3d Cir. 2004) (*Daubert* hearing not required where no novel challenge is raised); *See also, U.S. v. Freeman*, No. 06-20185, 2015 WL 2062754, \* (E.D. Mich. May 4, 2015) (declining to hold *Daubert* hearing on challenge to cell site data testimony); *Jones*, 918 F.Supp.2d at 5 (declining to hold *Daubert* hearing on challenge to S.A. Eicher's testimony and noting that another judge had recently done the same). Gatson's request for a *Daubert* hearing is therefore denied.

### 3. Conclusion

For the foregoing reasons, Gatson's request for a *Daubert* hearing is **DENIED**. An appropriate order accompanies this decision.

                                            /s/ William J. Martini
                              **WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 9, 2015**